**ROWAN COMPANIES, INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 77–3044.**

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1980.

Elmer H. Theis, Houston, Tex., K. Martin Worthy, Hamel, Park, McCabe & Saunders, Michael C. Durney, Washington, D. C., for plaintiff-appellant.

M. Carr Ferguson, Leonard J. Henzke, Jr., Asst. Attys. Gen., Gilbert E. Andrews, Acting Chief, Stanley S. Shaw, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before RUBIN and POLITZ, Circuit Judges, and SMITH *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

The Federal Insurance Contributions Act (FICA) and the Federal Unemployment Act (FUTA) both use the simple word "wages" to designate the base for the taxes imposed. The taxpayer contends that the Secretary of the Treasury may not by regulation define that word to include the value of meals and lodging furnished in kind by an employer for his own benefit to employees away from home overnight. The fact that the regulation has been in force for forty years, the purpose of the statutes and the method of their administration convince us that the Secretary has not exceeded his authority. We, therefore, affirm the district court's summary judgment for the government.

## I.

Rowan contracts with other firms to drill oil and gas wells both on land and beneath the offshore waters. When drilling offshore, Rowan moves its rig to the owner's location, as much as sixty miles from land. Each rig is operated by a drilling crew. Crews vary in size depending on the type of rig and may include from four to twelve persons. Each offshore rig operates twenty-four hours a day, manned by two crews, each working twelve hours. Members of each crew remain offshore for a fixed period, known as a tour of duty, usually ten days, when they are provided transportation to shore and a period of leave, usually five days. When their new tour is to commence, Rowan provides transportation to the offshore location.

Because of the cost of transporting crews to and from land at the start and end of each shift, Rowan hires caterers to provide meals and maintain living quarters for crews working offshore. Eating facilities, sleeping quarters and lounge areas used for leisure activities while a crew is off duty are usually located on a vessel moored alongside the drilling platform.

The decision to afford these services was reached unilaterally by Rowan for its own economic reasons without either individual or collective bargaining.[1] Identical meals and facilities are provided to all employees regardless of their status or rate of pay. An employee who for any reason does not elect to eat the meals furnished does not receive an allowance in lieu of them.

Rowan did not include the value of meals and lodging in computing an employee's income in order to determine either the amount to be reported as income earned by the employee on the W–2 form, the amount to be withheld from wages for income tax purposes or the base on which to calculate

---

* District Judge of the Northern District of Mississippi, sitting by designation.

1. In the district court the IRS contended both that Rowan furnished these services under an implied contract and that the value of the services constituted wages as a matter of law, even in the absence of such a contract. Because the implied contract issue was disputed, the IRS contended summary judgment for Rowan was inappropriate. Before us the government no longer argues that there was an implied contract but urges only that the value of the meals and lodging constitutes wages as a matter of law.

the amount to be paid by it for FUTA purposes and by it and the employee for FICA purposes.

The Internal Revenue Service added the fair market value of meals and lodging to the tax base for FICA and FUTA taxes and assessed a deficiency in employer taxes for 1967, 1968 and 1969. The taxes were not assessed on the value of transportation to and from work, which was also furnished by Rowan. Rowan paid the deficiency and sues for refund. The IRS concedes that these benefits are not income on which the employee must pay income tax, and that, as a result of a 1978 Supreme Court decision, they are not the subject of withholding. The IRS likewise does not challenge Rowan's position that it furnished these services for its own convenience.

## II.

The Federal Insurance Contributions Act, which was adopted in 1935,[2] imposes upon employers and employees alike a tax based on "wages," I.R.C. §§ 3101, 3111, currently at the rate of 6.13% on all wages up to $25,900 annually. The proceeds of this tax are used to defray the cost of the social security program. The Federal Unemploy-

ment Tax Act, also adopted in 1935, imposes a tax on employers based on "wages" paid to employees, I.R.C. § 3301. The proceeds of this tax are used to defray the cost of the federal unemployment compensation program. In 1943, Congress adopted the Current Tax Payment Act, requiring employers to withhold income taxes in an amount based on employees' "wages," I.R.C. § 3402.

The term "wages" is defined by both FICA, I.R.C. § 3121(a), and FUTA, I.R.C. § 3306(b), as meaning "all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash."[3] In enacting the social security taxes, Congress manifested its intent to impose the excise on a wide range of employer-furnished remuneration. The Committee Reports state that wages include compensation for services paid in any form, such as room or board. H.R. Rep. No. 615, 74th Cong., 1st Sess. 3, 1939–2 C.B. 600, 606; S. Rep. No. 628, 74th Cong., 1st Sess. 49, 1939–2 C.B. 611, 620).[4]

Beginning in 1937, the Secretary began issuing rulings interpreting each statute to include in wages meals and lodgings furnished specific types of employees.[5] In a

2. While the Act has been amended a number of times, the basis for the tax imposed and the purpose of the excise tax has never been altered.

3. The definition of "wages" for withholding purposes is substantially identical. *See* I.R.C. § 3401(a).

4. This legislative history from 1935 was not included in the IRS Cumulative Bulletin until 1939.

5. Immediately after the enactment of the Social Security Act in 1935, the Treasury promulgated Regulation 90, Article 207 (1936) (dealing with FICA), which provided, "The medium in which the remuneration is payable is . . . immaterial. It may be payable in cash or in something other than cash such as goods, lodging, food and clothing." Article 207 also excluded the value of the use of facilities such as cafeterias furnished by an employer for its convenience, as did Article 14 of Regulation 91 (dealing with FUTA), but neither dealt generally with the broader subject of meals and lodging. In 1937 these regulations were interpreted to require a sorority house to pay FICA and FUTA taxes on the value of free meals and lodging

furnished to college students who lived or worked at the sorority house, S.S.T. 96, 1937–1 C.B. 439, and the value of board and lodging furnished to student nurses was held to constitute wages for social security purposes, S.S.T. 149, 1937–1 C.B. 380. In 1938, the value of food and lodging furnished to employees of a sanitarium, located in a remote geographical area where the employees had to remain constantly on duty, was ruled social security "wages" under the Regulations. S.S.T. 321, 1938–2 C.B. 323. *See also* S.S.T. 386, 1940–1 C.B. 211 (declaring the value of food and lodging furnished to seamen aboard ships to be "wages" for social security purposes); S.S.T. 110, 1937–1 C.B. 440 (which treated "supper money" paid to an employee who worked overtime by his employer "for the convenience of the employer in having the overtime service of the employee" as not constituting "wages" for purposes of FICA and FUTA); S.S.T. 192, 1937–2 C.B. 449, providing that free lunches served employees constitute "wages" for FICA and FUTA purposes.

more general regulation promulgated in 1940, he excluded from wages facilities or privileges of relatively small value furnished employees by the employer but included meals or lodging furnished "for example, to restaurant or hotel employees, or to seamen or other employees aboard vessels, since generally these items constitute an appreciable part of the total remuneration of such employees." No mention was made of the convenience of the employer. Treas. Reg. 106 § 402.227 (FICA); Treas. Reg. 107 § 403.227 (FUTA). This provision was carried substantially unchanged into the 1951 regulations, Treas. Reg. 128 § 408.-226, and into the 1956 regulations issued pursuant to the 1954 Code, Treas. Reg. §§ 31.3121(a)–1(f), T.D. 6190, 1956–2 C.B. 605, 619 (FICA), Treas. Reg. §§ 31.3306(b)–1(f), T.D. 6199, 1956–2 C.B. 721, 740 (FUTA). The regulations issued in 1956 remain in effect today.

■ These regulations were adopted pursuant to express statutory authority. *See* I.R.C. § 7805(a). If they are reasonable and consistent with the statutory authorization, they may not be overturned. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 533 n.11, 99 S.Ct. 773, 781 n.11, 58 L.Ed.2d 785, 796 n.11 (1979); *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 976 n.6 (5th Cir. 1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *Kramertown Co. v. Commissioner*, 488 F.2d 728, 730 (5th Cir. 1974).

Absent some indication of a different congressional intention, it does not appear inconsistent with the purposes of FICA and FUTA to consider meals and lodging of appreciable value remuneration whether or not they are furnished for the employer's benefit and are not considered to be compensation to the employee for income tax purposes. Thus, the validity of the regulations was upheld in *Pacific American Fisheries v. United States*, 138 F.2d 464 (9th Cir. 1943). In 1962, Rev.Rul. 62–150, 1962–2 C.B. 213, declared that all worktime free

meals representing an appreciable part of the remuneration of the employees, regardless of the nature of the business or the convenience of the employer, were subject to FICA and FUTA taxes. This position was upheld in *S. S. Kresge Co. v. United States*, 218 F.Supp. 240 (E.D. Mich., 1963), and *S. S. Kresge Co. v. United States*, 379 F.2d 309 (6th Cir. 1967), although those cases rely in part on the existence of a *quid pro quo* nexus between the giving of free meals and the receipt of employee services as justification for treating the value of the meals as "wages." Their logic is not, however, confined to that situation.

Doubt arises not from any provision of FICA or FUTA but from the interpretation given the term "wages" in another tax statute. In 1943, Congress adopted the pay-as-you-go tax plan, still substantially in force, the Current Tax Payment Act of 1943, 57 Stat. 126. That act required employers to withhold income tax from "wages". The statute not only used that term but defined it in words that are, for present purposes, identical to those used in FICA and FUTA.[6] However, in the same year, the Secretary adopted regulations excluding from wages for withholding purposes "living quarters or meals . . . furnished to an employee for the convenience of the employer . . ." Treas.Reg. 115, § 404.101. Thus, under the regulations, the criterion of taxability of meals and lodging under FICA and FUTA was whether the benefits amounted to an appreciable part of wages while the test for withholding was whether they were furnished for the employer's convenience, however large the value.

This conflicting interpretation of the same word used in three statutes and defined by indistinguishable definitional phrases was confirmed without explanation in Rev. Rul. 1944–7–11685, Mim. 5357, 1944 C.B. 550. Yet a rationale is not difficult to surmise. The purpose of withholding is to set aside the amount needed for income tax. If income tax is not due on some payments to employees, it is unnecessary to withhold taxes from these payments.

---

**6.** "[A]ll remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash." I.R.C. § 1621(a).

Section 213 of the Revenue Act of 1918, 40 Stat. 1057, 1063, defined income as including "salaries, wages or compensation for personal service[s] . . . of whatever kind and in whatever form paid." The convenience of the employer doctrine arose in 1919, when the Treasury recognized that board and lodging furnished seamen in addition to their cash compensation is supplied for the convenience of their employer and that its value is not a part of the employee's income. O.D. 265, 1 C.B. 71. The convenience of the employer principle has been followed consistently in determining taxable income. *See* O.D. 514, 2 C.B. 90 (1920) (*supper money* furnished for extra work after hours is considered paid for the employer's convenience and is not taxable income); O.D. 814, 4 C.B. 84 (1921) (lodging and sustenance furnished employees engaged in fishing and canning); Treas.Reg. 111 § 29.22(a)–3 (1939 Code). In 1954, Congress codified a major part of this interpretation of the income tax statute, limiting, however, the exclusion from gross income[7] to meals furnished on the employer's business premises and lodging that the employee is required to accept as a condition of his employment.[8] 26 U.S.C. § 119.

When the convenience of the employer exception for income tax purposes was codified, the Commissioner contemporaneously reiterated that this exception had no effect on the inclusion of the value of such benefits in the social security base. Rev. Rul. 54–593, 1954–2 C.B. 30, 31; *accord,* Rev. Rul. 71–411, 1971–2 C.B. 103, 105; Rev. Rul. 72–385, 1972–2 C.B. 535, 538; Rev. Rul. 77–80, 1977–1 C.B. 36, 37 (value of free lodging furnished to religious leaders includable in the social security base even though exempt from income withholding taxes by reason of the section 119 "convenience of the employer" rules).

The inconsistent definition of wages for withholding purposes, however, led to the argument that the more limited interpretation given the term used in the Current Tax Payments Act itself qualified the earlier definition used for FICA and FUTA. Thus, in *Royster Co. v. United States,* 479 F.2d 387 (4th Cir. 1973), the Fourth Circuit considered whether cash reimbursements to salesmen for the cost of their meals constituted wages for FICA and FUTA. Reasoning that these were not wages for withholding and that the term wages "has the same essential meaning," 479 F.2d at 390, in the withholding, FICA and FUTA tax statutes, the court held that they are not subject to the social security taxes. Similarly, the Seventh Circuit recently held that the difference between the cost to the employer of cars provided to employees for personal use and the amount the employees reimbursed the employer for that use was not wages, relying heavily on *Royster.*[9] *Oscar Mayer & Co. v. United States,* 623 F.2d 1223 (7th Cir. 1980).

The primary premise of these decisions appears to be semantic consistency. If so, it might with equal logic be argued that the Secretary's interpretation of wages under the withholding statute, coming as it did some years after the FICA and FUTA regulations, was the improper result. The inquiry is not, however, merely one of semantic comparison. The words, even if identical, are not components of an algebraic equation each side of which must inevitably yield the same result. We are not engaged

---

**7.** .The 1954 income tax statute defines income in extremely broad terms, imposing a tax on "income from whatever source derived . . including wages, or compensation for personal service . . . of whatever kind and in whatever form paid." I.R.C. § 61. It does not limit taxability to wages. *See Commissioner v. Kowalski,* 434 U.S. 77, 82–83, 98 S.Ct. 315, 319, 54 L.Ed.2d 252, 259 (1977).

**8.** The amendment did not resolve the question of the taxability of other employer-furnished fringe benefits. In *Commissioner v. Kowalski,* 434 U.S. 77, 98 S.Ct. 315, 54 L.Ed. 252 (1977),

the court held that cash reimbursements to employees for meals consumed while on patrol duty constitutes income to the employees under section 61 and is not excludable under section 119. *This still leaves some questions unresolved. See* Resnik, *Meal Reimbursements as an Employee Fringe Benefit,* 10 Loy.L.Rev. 789 (1979).

**9.** The court also relied on the absence of a "more specific" regulation clearly including the benefit within the definition of wages for FICA and FUTA purposes. At 1225 1227.

in a Socratic dialogue to determine whether all things bearing the same name are alike, but in deciding to what extent Congress purposely limited the authority of the administrative agency by the use of these words in a consistent pattern. This conclusion must be influenced by the purposes of the statutes, the uses made of their revenues and their relationship with other statutes. Resolution of the issue does not turn on how we would, without further guidance, interpret the words, but on whether the construction reached by the Secretary is a permissible one.

Federal income taxes are used for general expenditures. Withholding is a means to collect income taxes. FICA and FUTA taxes are collected for special purposes. They are not general revenue measures. The revenues are spent primarily to benefit the employees affected. The employer's obligation to withhold and pay FICA taxes and to pay FUTA taxes is primary whereas its obligation under the income tax provisions is secondary. If income tax is not withheld, the tax is still a debt of the wage-earner. If FICA or FUTA are interpreted to exclude an item, no revenue is produced.

These factors must be taken into account in weighing the applicability of the 1978 Supreme Court decision that an employer is not required to withhold taxes from cash reimbursement paid to employees for noon lunches while the employees are away from normal duty stations or on overnight trips. *Central Illinois Public Service Co. v. United States*, 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978). Rejecting the argument that, because the sums paid were taxable income, withholding was appropriate, the Court distinguished between the broad definition of income in the income tax statute and the contrasting confinement of withholding to "wages" defined as "all remuneration (other than fees paid a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash." I.R.C. § 3401(a). The government argued that the reimbursements were part

of the "total package of remuneration designed to attract and hold the employee to the company." 435 U.S. at 28, 98 S.Ct. at 921, 55 L.Ed.2d at 89. The Court labelled this conclusion "facile." Noting that the regulation excluded benefits afforded employees away from home overnight, it refused to countenance the inclusion of other meals in wages. *Cf. United States v. Correll*, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967) (restricting to overnight trips the travel expense deduction for meal costs under I.R.C. § 162(a)(2)). The Court concluded that simplicity and ease of administration were the standards adopted by Congress in enacting withholding in 1942 and that these objectives had not since been changed. The Court thought it important that, absent further specific congressional action, the employer's obligation "be precise and not speculative." 435 U.S. at 31, 98 S.Ct. at 923, 55 L.Ed.2d at 91. Furthermore, because the Court was faced only with an attempt to apply retroactively a ruling imposing a tax on payments previously made, it did not decide the validity of regulations operating prospectively, as do those before us. *See* 435 U.S. at 32 n.12, 98 S.Ct. at 923 n.12, 55 L.Ed. at 91 n.12, and concurring opinion of Mr. Justice Brennan, joined by The Chief Justice and Mr. Justice Powell, 435 U.S. at 33–38, 98 S.Ct. at 923–26, 55 L.Ed.2d at 91–94.

The factors considered in *Central Illinois Public Service* apply here as well. Yet they do not require us to decide that a purely prospective regulation, suffered for forty years by a Congress acutely attuned to tax considerations,[10] is invalid. "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *United States v. Correll*, 389 U.S. 299, 305–306, 88 S.Ct. 445, 449, 19 L.Ed.2d 537, 543 (1967) (citing prior Supreme Court cases). Ease of administration and uniformity of interpretation, even if not icons, merit consideration. Yet most businesses today utilize computers to calculate taxes and it is a

---

10. At least some members of Congress are aware of these regulations. *See* 124 Cong.Rec. S. 12367 (Daily ed. Aug. 2, 1978) (remarks of Sen. Long).

simple matter to devise a program that includes some items for one or two taxes and excludes the same items in calculating others.

■ Considering these facts and the purposes served by FICA and FUTA, the latitude given the Secretary of the Treasury, and the difference in purpose between FICA and FUTA, on the one hand, and withholding and income taxes on the other, we are unable to agree with the rationale adopted by the Court of Claims in *Hotel Conquistador, Inc. v. United States*, 597 F.2d 1348 (Ct. Cl. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 702, 62 L.Ed.2d 668 (1980), in holding that cafeteria meals furnished employees not away from home overnight were "not 'remuneration', therefore, not 'wages'" for FICA and FUTA. 597 F.2d at 1350.

The regulations before us are not without reason. The only appellate decisions restricting their scope are *Royster*, decided in 1973, *Hotel Conquistador*, decided in 1978, and *Oscar Mayer*, decided in 1980. While we are not unaffected by the pragmatic approach they represent, we believe that each proceeds largely on the thesis that the same words used in different statutes must mean the same thing and that, therefore,

Congress intended to deny interpretative power to the Secretary. We are unable to subscribe to that conclusion.

Therefore, the judgment of the district court sustaining the validity of the FICA and FUTA regulations is AFFIRMED.[11]

---

11. In Revenue Ruling 80–41, I.R.B. 1980–7, 14 (Feb. 19, 1980), the Internal Revenue Service stated:

In *Hotel Conquistador, Inc. v. United States*, 597 F.2d 1980 (Ct. Cl. 1979), *cert. denied*, January 14, 1980, the Court of Claims held that the value of certain meals furnished without charge to hotel and restaurant employees was not "wages" under sections 3121(a) and 3306(b) of the Internal Revenue Code.

It is the long standing position of the Service that the value of meals furnished without charge, for example to hotel or restaurant employees, or to seamen or other employees aboard vessels, is wages under sections 3121(a) and 3306(b) of the Code. This position has been supported by the courts in *S. S. Kresge Co. v. United States*, 379 F.2d 309 (6th Cir. 1967), concerning free meals furnished to lunch stand employees, and *Pacific American Fisheries, Inc. v. United States*, 138 F.2d 464 (9th Cir. 1943), concerning the value of board and lodging furnished to salmon packing plant employees.

For these reasons, the Service will not follow the decision of the United States Court of Claims in the *Hotel Conquistador* case, and employers must continue to treat the value of such free meals furnished to their employees as wages under sections 3121(a) and 3306(b) of the Code.

In a letter to this court, the IRS seeks to buttress its position on the thesis that the Social Security Administration is mandated by 42 U.S.C. § 409 and § 404.1026(a)(6) of the Social Security Regulations on Federal Old-Age Survivors and Disability Insurance, 20 C.F.R. § 404.1026(a)(6) (1979), to compute social security benefits on a base that includes the value of employer furnished meals.

While in this case we came to the result favored by the IRS, we cannot do so on this basis for it is an evident non-sequitur: 42 U.S.C. § 409 (the Social Security Act) defines wages as "remuneration." If meals and lodging provided by Rowan are not remuneration for computing FICA tax, they are equally not remuneration for computing social security benefits. If the one is an incorrect definition, so is the other. An error is not cancelled by being twice repeated.