## ROWAN COS., INC. *v.* UNITED STATES

No. 80–780.   Argued April 21, 1981—Decided June 8, 1981

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, BLACKMUN, REHNQUIST, and STEVENS, JJ., joined.   WHITE, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 263.

*K. Martin Worthy* argued the cause for petitioner.   With

him on the briefs were *Michael C. Durney* and *Elmer H. Theis.*

*Stuart A. Smith* argued the cause for the United States. With him on the brief were *Solicitor General McCree, Acting Assistant Attorney General Murray, Leonard J. Henzke, Jr.,* and *Stanley S. Shaw, Jr.**

JUSTICE POWELL delivered the opinion of the Court.

This case concerns the federal taxes imposed upon employers by the Federal Insurance Contributions Act (FICA), 26 U. S. C. § 3101 *et seq.,* and the Federal Unemployment Tax Act (FUTA), 26 U. S. C. § 3301 *et seq.* The question is whether petitioner should have included in the computation of "wages," which is the base for taxation under FICA and FUTA, the value of meals and lodging provided for its own convenience to employees working on offshore oil rigs.

I

During the tax years in question, 1967–1969, petitioner Rowan Companies, Inc., owned and operated rigs for drilling oil and gas wells, both on land and offshore. Some of petitioner's offshore rigs were located as many as 60 miles from land. It cost petitioner less and was more convenient to provide meals and lodging to employees at these rigs than to transport the employees to and from the rigs for each work shift.[1] Employees worked at these rigs for 10-day tours of duty, and petitioner then transported them back to land for

---

*Briefs of *amici curiae* urging reversal were filed by *Roger J. Marzulla* and *Maxwell A. Miller* for Kim Aspatore et al.; by *Thomas W. Power* and *Robert D. McDonald* for the Foodservice and Lodging Institute; and by *Lawrence Gerber* for the Young Men's Christian Association of Metropolitan Hartford, Inc.

[1] It cost petitioner about $6 per day, per man to engage a caterer who provided meals and maintained living quarters on a vessel moored alongside the drilling rig. It would have cost petitioner about $25 per man to have transported the crews to and from land for each work shift.

5-day periods of leave. All employees at a rig received the same meals and lodging facilities, regardless of employment status or pay. Employees did not receive any cash allowance if they chose not to eat a meal. Petitioner did not provide meals or lodging to employees during their leave; nor did it provide meals or lodging to employees working on land-based rigs.

Petitioner did not include the value of the meals and lodging in computing its employees' "wages" for the purpose of paying taxes under FICA or FUTA.[2] Nor did petitioner include this value in computing "wages" for the purpose of withholding its employees' federal income tax under 26 U. S. C. § 3402 (a).[3] Its uniform practice appeared to be consistent with the statutory language, as Congress defined "wages" in substantially identical language for each of these three obligations upon employers.[4] Upon audit, however, the Internal Revenue Service included the fair value of the meals

---

[2] FICA imposes "on every employer an excise tax, with respect to having individuals in his employ, equal to [specified] percentages of the wages . . . paid by him with respect to employment." 26 U. S. C. § 3111. FICA also imposes a tax upon employees, based upon "wages." § 3101 (a). These taxes fund the Social Security programs. FUTA imposes upon certain employers "an excise tax, with respect to having individuals in [their] employ, equal to [specified percentages] of the total wages . . . paid by [them] during the calendar year with respect to employment." § 3301 (1970 ed.). This tax funds the federal component of a cooperative federal-state program of unemployment insurance.

[3] Section 3402 (a) provides that "every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with tables prescribed by the Secretary."

[4] Congress defined "wages" identically in FICA and FUTA, as "all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash." §§ 3121 (a) (FICA), 3306 (b) (FUTA). For the purpose of income-tax withholding, Congress defined "wages" as "all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash." § 3401 (a).

and lodging in the employees' "wages" for the purpose of FICA and FUTA, but not for the purpose of income-tax withholding under § 3402 (a). The Service acted consistently with the present Treasury Regulations that interpret the definition of "wages" in FICA and FUTA to include the value of these meals and lodging,[5] whereas the substantially identical definition of "wages" in § 3401 (a) is interpreted by Treasury Regulations to exclude this value. Compare Treas. Reg. §§ 31.3121 (a)–1 (e), (f) (FICA), 26 CFR §§ 31.3121 (a)–1 (e), (f) (1980); Treas. Reg. §§ 31.3306 (b)–1 (e), (f) (FUTA), 26 CFR §§ 31.3306 (b)–1 (e), (f) (1980); with Treas. Reg. §§ 31.3401 (a)–1 (b)(9), (10) (income-tax withholding), 26 CFR §§ 31.3401 (a)–1 (b)(9), (10) (1980). Petitioner paid the additional assessment and brought this suit for a refund under 28 U. S. C. § 1346 (a)(1).[6]

The District Court for the Southern District of Texas granted the Government's motion for summary judgment. The Court of Appeals for the Fifth Circuit affirmed, expressing the view that the different interpretations of the definition of "wages" are justified by the different purposes of FICA and FUTA, on the one hand, and income-tax withholding, on the other. 624 F. 2d 701, 707 (1980). We granted a writ of certiorari, 449 U. S. 1109 (1981), because the Court of Appeals' decision conflicts with the decisions of other Courts of Appeals.[7] We now reverse.

## II

The Government acknowledges that petitioner properly excluded the value of the meals and lodging in computing the "wages" from which it withheld employees' income tax under

---

[5] See n. 9, *infra.*

[6] The additional assessment totaled $35,198.46, plus interest.

[7] See *Oscar Mayer & Co.* v. *United States,* 623 F. 2d 1223 (CA7 1980); *Hotel Conquistador, Inc.* v. *United States,* 220 Ct. Cl. 20, 597 F. 2d 1348 (1979), cert. denied, 444 U. S. 1032 (1980).

§ 3402 (a). Under the Treasury Regulation interpreting the definition of "wages" for income-tax withholding, the employer excludes the value of meals or lodging from "wages" if the employee excludes the value from his gross income. Treas. Reg. § 31.3401 (a)–1 (b)(9), 26 CFR § 31.3401 (a)–1 (b)(9) (1980). Under the convenience-of-the-employer rule, an employee may exclude from gross income the value of meals and lodging furnished to him by his employer if the employer furnished both the meals and lodging for its own convenience, furnished the meals on its business premises, and required the employee to accept the lodging on the business premises as a condition of employment. 26 U. S. C. § 119 (1976 ed., Supp. III).[8] Petitioner's provision of meals and lodging to employees on its offshore rigs satisfied each of these § 119 requirements. The value of the meals and lodging therefore was excludable by the employer from "wages" under Treas. Reg. § 31.3401 (a)–1 (b)(9), 26 CFR § 31.3401 (a)–1 (b)(9) (1980). See generally *Commissioner* v. *Kowalski,* 434 U. S. 77 (1977).

Notwithstanding this acknowledgment, the Government contends that petitioner should have included the value of the meals and lodging in "wages" for purposes of FICA and FUTA. It relies on Treas. Reg. §§ 31.3121 (a)–1 (f)

---

[8] Section 119 reads, in pertinent part:

"(a) Meals and lodging furnished to employee, his spouse, and his dependents, pursuant to employment.

"There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him, his spouse, or any of his dependents by or on behalf of his employer for the convenience of the employer, but only if—

"(1) in the case of meals, the meals are furnished on the business premises of the employer, or

"(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment."

(FICA) and 31.3306 (b)–1 (f) (FUTA), 26 CFR §§ 31.3121 (a)–1 (f) and 31.3306 (b)–1 (f) (1980), that provide:

> "Ordinarily, facilities or privileges (such as entertainment, medical services, or so-called 'courtesy' discounts on purchases), furnished or offered by an employer to his employees generally, are not considered as remuneration for employment if such facilities or privileges are of relatively small value and are offered or furnished by the employer merely as a means of promoting the health, good will, contentment, or efficiency of his employees. The term 'facilities or privileges,' however, does not ordinarily include the value of meals or lodging furnished, for example, to restaurant or hotel employees, or to seamen or other employees aboard vessels, since generally these items constitute an appreciable part of the total remuneration of such employees."

If valid, these regulations dictate that the value of the meals and lodging provided by petitioner to its employees on offshore rigs was includable in "wages" as defined in FICA and FUTA, even though excludable from "wages" under the substantially identical definition in § 3401 (a) for income-tax withholding.[9]

We consider Treasury Regulations valid if they "implement the congressional mandate in some reasonable manner." *United States* v. *Correll,* 389 U. S. 299, 307 (1967); accord, *Commissioner* v. *Portland Cement Co. of Utah,* 450 U. S. 156,

---

[9] The Court of Appeals assumed, without explicitly holding, that the meals and lodging provided by petitioner fall within Treas. Reg. §§ 31.3121 (a)–1 (f) and 31.3306 (b)–1 (f), 26 CFR §§ 31.3121 (a)–1 (f) and 31.3306 (b)–1 (f) (1980), if those regulations are valid. Petitioner did not question this assumption in its petition for writ of certiorari, although its reply brief on the merits disputed the Government's assertion that these regulations govern this case if valid. Reply Brief for Petitioner 3, n. 6. We accept the Government's assertion for the purposes of this opinion.

169 (1981). In *National Muffler Dealers Assn.* v. *United States,* 440 U. S. 472, 477 (1979), we stated: "In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." Harmony between statutory language and regulation is particularly significant in this case. Congress itself defined the word at issue—"wages"—and the Commissioner interpreted Congress' definition only under his general authority to "prescribe all needful rules." 26 U. S. C. § 7805 (a). Because we therefore can measure the Commissioner's interpretation against a specific provision in the Code, we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision. Compare *Commissioner* v. *Portland Cement Co. of Utah, supra,* at 165; *Fulman* v. *United States,* 434 U. S. 528, 533 (1978); *Batterton* v. *Francis,* 432 U. S. 416, 424–425, and nn. 8–9 (1977). Where the Commissioner acts under specific authority, our primary inquiry is whether the interpretation or method is within the delegation of authority.

Among other considerations relevant to the validity of Treasury Regulations, we inquire whether the regulation "is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent," *National Muffler Dealers Assn.* v. *United States,* 440 U. S., at 477; and "[i]f the regulation dates from a later period, the manner in which it evolved merits inquiry." *Ibid.* We also consider, if pertinent, "the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute." *Ibid.* In this case, we hold that Treas. Reg. §§ 31.3121 (a)–1 (f) and 31.3306 (b)–1 (f) are invalid, for they fail to implement the congressional mandate in a consistent and reasonable manner.

## A

Congress chose "wages" as the base for measuring employers' obligations under FICA, FUTA, and income-tax withholding. In *Central Illinois Public Service Co. v. United States,* 435 U. S. 21 (1978), we considered Congress' use of the concepts of "income" and "wages" for the purpose of income-tax withholding. The question was whether an employer should have included in "wages" for income-tax withholding the reimbursements it had given employees for lunch expenses on company travel that had not required overnight stays. We held that the employer was not required to include the reimbursements in "wages," even though the reimbursements constituted "income" to the employees.[10] This holding relied on the recognition that "[t]he two concepts—income and wages—obviously are not necessarily the same. Wages usually are income, but many items qualify as income and yet clearly are not wages." *Id.,* at 25 (footnote omitted). In short, "wages" is a narrower concept than "income," see *ibid.,* and the fact that the reimbursements were "income" to the employees did not necessarily mean that the employer had to include them in "wages" for income-tax withholding.

Petitioner contends that its position in this case follows from our reasoning in *Central Illinois.* Because "wages" is a narrower concept than "income" for the purposes of income-tax withholding, it is argued that the value of the meals and lodging in this case—which the Government acknowledges is not "income"—therefore cannot be "wages" under FICA and FUTA. Petitioner's argument rests on the assumption that Congress intended the term "wages" to have

---

[10] The convenience-of-the-employer rule was not implicated in determining whether these reimbursements constituted "income" because the requirements of that rule were not present. See n. 8, *supra.* The treatment of the reimbursements for income taxation was governed by § 162 (a)(2), 26 U. S. C. § 162 (a)(2), which allows a deduction for certain traveling expenses.

the same meaning for purposes of FICA, FUTA, and income-tax withholding. We now consider whether petitioner's assumption is correct.

## B

Congress enacted the predecessor provisions of FICA and FUTA as Titles VIII and IX of the Social Security Act of 1935, ch. 531, 49 Stat. 636, 639. It chose "wages" as the base for taxation of employers, § 804, 49 Stat. 637; § 901, 49 Stat. 639, and it defined "wages." § 811 (a), 49 Stat. 639; § 907 (b), 49 Stat. 642. Congress originated the present income-tax withholding system in § 172 of the Revenue Act of 1942, 56 Stat. 884. See *Central Illinois Public Service Co.* v. *United States, supra,* at 26–27. It again chose "wages" as the base, 56 Stat. 888, and defined "wages" in substantially the same language that it used in FICA and FUTA, *id.,* at 887. When Congress revised the withholding system by replacing § 172 with the Current Tax Payment Act of 1943, 57 Stat. 126, it retained the definition of "wages." *Ibid.* In view of this sequence of consistency, the plain language of the statutes is strong evidence that Congress intended "wages" to mean the same thing under FICA, FUTA, and income-tax withholding.

The legislative histories of the Acts establishing income-tax withholding support the conclusion to be drawn from the plain language. These histories reveal a congressional concern for "the interest of simplicity and ease of administration." S. Rep. No. 1631, 77th Cong., 2d Sess., 165 (1942) (Revenue Act of 1942). See *Central Illinois Public Service Co.* v. *United States, supra,* at 31. They also reveal that one of the means Congress chose in order to promote simplicity was to base withholding upon the same measure— "wages"—as taxation under FICA and FUTA. Thus, whereas the withholding system proposed by the House provided for withholding upon dividends and bond interest in addition to wages, H. R. Rep. No. 2333, 77th Cong., 2d Sess.;

125 (1942), the system proposed by the Senate and enacted in § 172 limited withholding to wages. S. Rep. No. 1631, *supra,* at 165. "This was a standard that was intentionally narrow and precise." *Central Illinois Public Service Co.* v. *United States, supra,* at 31. Section 172 also specified that remuneration for certain services was excepted from "wages." According to the Senate Report, "[t]hese exceptions [for income-tax withholding] are identical with the exceptions extended to such services for Social Security tax purposes and are intended to receive the same construction and have the same scope." S. Rep. No. 1631, *supra,* at 166.

When Congress replaced § 172, the House devoted much attention to the specified exceptions from "wages," H. R. Rep. No. 268, 78th Cong., 1st Sess., pt. 1, p. 14 (1943); H. R. Rep. No. 401, 78th Cong., 1st Sess., pt. 1, pp. 22–23 (1943), but it left the essential definition of "wages" unchanged. H. R. Rep. No. 268, *supra,* at 14. The Senate modified the bill proposed by the House, and reported: "[T]he methods of collection, payment, and administration of the withholding tax have been coordinated generally with those applicable to the Social Security tax imposed on employees under section 1400 of the code. This proposal has been made in order to facilitate the work of both the Government and the employer in administering the withholding system." S. Rep. No. 221, 78th Cong., 1st Sess., 17 (1943); see also H. R. Conf. Rep. No. 510, 78th Cong., 1st Sess., 28 (1943).[11]

---

[11] The Current Tax Payment Act of 1943 moved the income-tax withholding provisions into the same chapter of the Internal Revenue Code of 1939 as contained FICA and FUTA. The Social Security Act Amendments of 1939, 53 Stat. 1360, had incorporated Titles VIII and IX of the Social Security Act of 1935, as amended, into Chapter 9 of the Internal Revenue Code of 1939 as FICA and FUTA. The old-age and disability tax provisions of Title VIII became FICA in Subchapter A of Chapter 9, and the unemployment compensation tax provision of Title IX became FUTA in Subchapter C. Section 172 of the Revenue Act of 1942 had added the income-tax withholding system to Chapter 1 of the Internal

In sum, Congress intended in both the Revenue Act of 1942 and the Current Tax Payment Act of 1943 to coordinate the income-tax withholding system with FICA and FUTA. In both instances, Congress did so to promote simplicity and ease of administration. Contradictory interpretations of substantially identical definitions do not serve that interest. It would be extraordinary for a Congress pursuing this interest to intend, without ever saying so, for identical definitions to be interpreted differently.

Despite the plain language of Congress' definition of "wages" and this legislative history, the Government contends that FICA and FUTA compose a distinct system of taxation to which the rules of income taxation, such as the exclusion of the value of meals and lodging from "income" under the convenience-of-the-employer rule in § 119, do not apply. In support, the Government recites congressional Committee Reports indicating that Congress enacted the Social Security Act to "relieve the existing distress and . . . to reduce destitution and dependency in the future," H. R. Rep. No. 615, 74th Cong., 1st Sess., 3 (1935). See also S. Rep. No. 628, 74th Cong., 1st Sess., 2 (1935). These Reports also state that "[w]ages include not only the cash payments made to the employee for work done, but also compensation for services in any other form, such as room, board, etc." H. R. Rep. No. 615, *supra*, at 32 (Title VIII (FICA)); accord, *id.*, at 36 (Title IX (FUTA)); S. Rep. No. 628, *supra*, at 44 (FICA), 49 (FUTA). The Government concludes that Congress intended to impose the taxes under FICA and FUTA upon a broad range of remuneration in order to accomplish the Act's purposes.

We are not persuaded by this contention. The reference by Congress to "room, board, etc." as examples of "wages" under Titles VIII and IX is ambiguous. It does not neces-

---

Revenue Code as §§ 450–476. The Current Tax Payment Act moved this system into Chapter 9 of the Code as §§ 1621–1632.

sarily mean that Congress intended to tax remuneration in kind without regard to principles developed under income taxation, such as the convenience-of-the-employer rule.[12] This rule first appeared in 1919, O. D. 265, 1 Cum. Bull. 71, and was well established by 1935. See *Commissioner* v. *Kowalski*, 434 U. S., at 84–87. There is no evidence in the Committee Reports cited by the Government that Congress intended to exclude this established rule from determinations under Titles VIII and IX or to create a different rule to govern "room, board, etc." We therefore think that the reference in the Committee Reports to "room, board, etc." lends no support to the validity of the Treasury Regulations on which the Government relies.[13]

The Government further contends, however, that a line of Treasury Regulations and rulings unbroken since 1940 refutes petitioner's view that Congress intended a consistent interpretation of the term "wages." It also contends that we may infer congressional endorsement of these Treasury Regulations and rulings from Congress' re-enactment of FICA, FUTA, and the income-tax withholding provisions in the Internal Revenue Code of 1954. We now address these contentions.

## C

The history of the Treasury Regulations and rulings interpreting Congress' definition of "wages" in FICA and FUTA

---

[12] The inclusion of "room, board, etc." in "wages" under FICA and FUTA is not inconsistent with the application of the convenience-of-the-employer rule in determining "wages." Under the rule, room and board constitute "wages" unless they are provided for the employer's convenience.

[13] It is true that Congress codified the convenience-of-the-employer rule in § 119 of the income-tax provisions of the Code in 1954. But that does not mean that Congress implicitly foreclosed the applicability of the rule to other provisions of the Code. To the contrary, Congress in 1954 retained—and since has left unchanged—the substantially identical definitions of "wages" for all three obligations upon employers; and the rule expressly applies to "wages" under the income-tax withholding provisions. Treas. Reg. § 31.3401 (a)–1 (b) (9), 26 CFR § 31.3401 (a)–1 (b) (9) (1980).

is far from consistent.  The Commissioner's contemporaneous construction of Titles VIII (FICA) and IX (FUTA) of the Social Security Act of 1935 was that the convenience-of-the-employer rule applied to the computation of "wages." Treas. Regs. 90, Art. 207 (1936) (Title IX); Treas. Regs. 91, Art. 14 (1936) (Title VIII).[14]  Pursuant to Treas. Regs. 90, Art. 207, the Service ruled in 1937 that "supper money" paid to employees working overtime for the convenience of the employer was excludable from "wages" under both Titles. S. S. T. 110, 1937–1 Cum. Bull. 441.  Again in 1938, the Service ruled in S. S. T. 302, 1938–1 Cum. Bull. 457, that free lunches provided by an employer for its own convenience were excludable from "wages" under Title IX.  See also S. S. T. 383, 1940–1 Cum. Bull. 210–211.

The position taken in the Treasury Regulations and rulings subsequently changed, but without explanation.  In 1939, Congress passed the Social Security Act Amendments of 1939, ch. 666, 53 Stat. 1360, that amended some of the specified exclusions from "wages" under FICA and FUTA but left unchanged the definition of "wages."  Compare §§ 603, 614, 53 Stat. 1382, 1392, with §§ 1426 (a), 1607 (b), Internal Revenue Code of 1939, 26 U. S. C. §§ 1426 (a), 1607 (b) (1952 ed.).  In 1940, however, the Commissioner issued Treas. Regs. 106, § 402.227 (FICA), and Treas. Regs. 107, § 403.227 (FUTA).  These Regulations, which were virtually

---

[14] Treasury Regulations 90, Art. 207, provided that "facilities or privileges (such as entertainment, cafeterias, restaurants, medical services, or so-called 'courtesy' discounts on purchases), furnished or offered by an employer to his employees generally, are not considered as remuneration for services if such facilities or privileges are offered or furnished by the employer merely as a convenience to the employer or as a means of promoting the health, good will, contentment, or efficiency of his employees." Treasury Regulations 91, Art. 14, differed slightly, in that it did not contain the phrase "as a convenience to the employer," but the Service interpreted it in the same way that it interpreted Treas. Regs. 90, Art. 207. See S. S. T. 302, 1938–1 Cum. Bull. 457.

identical to the present Treasury Regulations at issue in this case, excluded the convenience-of-the-employer rule from the computation of "wages" under FICA and FUTA. No reasons were stated for this change. Pursuant to the new Regulations, the Service ruled in 1940 that the value of meals and lodging furnished to the crew operating a steamship was includable in "wages" under FICA and FUTA. S. S. T. 386, 1940–1 Cum. Bull. 211–212. In 1944, the Commissioner stated in Mim. 5657, 1944 Cum. Bull. 551, that the value of meals and lodging furnished by an employer was includable in "wages," and the Commissioner added without explanation that "[i]t is immaterial, for the purposes of such taxes, whether the quarters or meals are furnished for the convenience of the employer."

The Government contends that the 1940 Regulations and the rulings issued pursuant to them acquired "the effect of law" when Congress re-enacted FICA and FUTA without substantial change in the Internal Revenue Code of 1954. *United States* v. *Correll,* 389 U. S., at 305; *Cammarano* v. *United States,* 358 U. S. 498, 510–511 (1959). In its view, the 1936 Treasury Regulations and the rulings under them were short-lived and therefore are inconsequential. See *National Muffler Dealers Assn.* v. *United States,* 440 U. S., at 485–486.[15]

We are unconvinced. Despite Treas. Regs. 106 and 107 and the rulings issued under them, the rule of S. S. T. 302 issued in 1938—that the value of meals provided for the convenience of the employer is excludable from "wages"—remained in effect until after 1954. In 1957, the Service ruled

---

[15] The Government also relies on *Pacific American Fisheries, Inc.* v. *United States,* 138 F. 2d 464 (CA9 1943), in contending that we should infer congressional endorsement of the 1940 Treasury Regulations. The court in that case held that "what might not be taxable income for income tax purposes might constitute wages under the provisions of the Social Security Act." *Id.,* at 465. But the Government cites nothing to suggest that this Court of Appeals' decision was brought to Congress' attention when it re-enacted the Code in 1954.

that S. S. T. 302 did not apply to the provision of meals to restaurant employees, but it also stated that S. S. T. 302 was otherwise "still in full force and effect." Rev. Rul. 57–471, 1957–2 Cum. Bull. 632. The Service did not explain why it took this position as to S. S. T. 302. It is thus clear that as late as 1957—17 years after Treas. Regs. 106 and 107 were adopted—the Service itself was inconsistent in construing the term "wages." Indeed, it was not until 1962 that the Commissioner finally disavowed S. S. T. 302 in Rev. Rul. 62–150, 1962–2 Cum. Bull. 213.[16] It therefore assumes a great deal to argue that in 1954, when FICA and FUTA were re-enacted, Congress implicitly approved these Treasury Regulations.[17] The Commissioner himself had offered no explanation by 1954

---

[16] Revenue Ruling 62–150 noted that S. S. T. 302 had been issued under Treasury Regulations 90, Art. 207, which incorporated the convenience-of-the-employer rule for determining "wages," and that the regulations had omitted that rule since 1940. But it did not explain why the Commissioner had changed the regulations in the first place, or why S. S. T. 302 remained in effect for years after the regulations were changed.

[17] A series of private rulings from 1954 to 1965 further reveals that S. S. T. 302 remained a source of inquiry and confusion for the Service and employers well after the re-enactment of the Internal Revenue Code in 1954. Although these rulings have no precedential force, see 26 U. S. C. § 6110 (j)(3); Treas. Reg. § 301.6110–7 (b), 26 CFR § 301.6110–7 (b) (1980), they are evidence that S. S. T. 302 did not merely lie dormant on the books after the Commissioner issued Treas. Regs. 106, § 402.227 (FICA), and 107, § 403.227 (FUTA), in 1940.

In the first of this series, a school inquired whether it had to include the value of meals served to teachers for the school's convenience in the teachers' "wages" under FICA. The Service replied in January 1954 that the school need not, for "S. S. T. 302 is applicable to the instant case." Private Ruling 5401062910A. In the second ruling, an employer inquired whether to include in "wages" under FICA the value of meals and lodging provided pursuant to an employment contract. The Service replied in March 1954 that the employer should include this value because of the employment contract. It stated that S. S. T. 302 was "based on the premises that the lunches were of relatively small value and were furnished merely as a means of promoting the health, good will, contentment, or efficiency of the employees." Private Ruling 5403042970A. In the third,

as to why the contemporaneous regulations of 1936 were changed in 1940 or why inconsistent rulings still were being issued. Indeed, the Government in this case has not yet offered an explanation.

The history of the Treasury Regulations and rulings interpreting Congress' definition of "wages" in FICA and FUTA therefore lends only the most ambiguous support to the view that Congress intended to approve different interpretations of "wages" when it re-enacted the Internal Revenue Code in 1954. The differing interpretations were not substantially contemporaneous constructions of the statutes, and nothing in the manner in which the interpretations changed is probative of congressional endorsement. Nor is there evidence of any particular consideration of these regulations by Congress during re-enactment.

---

a restaurant inquired whether to include in "wages" for FICA and FUTA the value of meals provided to employees. The Service replied in January 1955 that the restaurant need not include this value, for "S. S. T. 302 is equally applicable in the instant case." Private Ruling 5501244180A. This ruling was flatly inconsistent with the Treasury Regulations that included in "wages" the value of meals provided to employees by restaurants. Treas. Regs. 106, § 402.227 (FICA); Treas. Regs. 107, § 403.227 (FUTA).

The Service had changed its view of S. S. T. 302 by the time it issued the fourth in this series. In 1957, another restaurant inquired whether the value of meals provided to employees was includable in "wages" for FICA and FUTA. Relying on S. S. T. 302, the restaurant contended that the value was excludable. The Service answered that S. S. T. 302 "cannot be regarded as controlling the treatment of meals furnished to employees in the restaurant industry." Private Ruling 5710044200A. Nonetheless, like Rev. Rul. 57–471, 1957–2 Cum. Bull. 630, this private ruling repudiated S. S. T. 302 only as to the restaurant industry, thus leaving the convenience-of-the-employer rule apparently applicable to determinations by other employers. Finally, in 1965, an employer inquired whether the revocation of S. S. T. 302 by Rev. Rul. 62–150, 1962–2 Cum. Bull. 213, applied retroactively. The Service ruled that the limitation of S. S. T. 302 in Rev. Rul. 57–471 applied retroactively only as to employers operating restaurants. Private Ruling 6507023460A.

## III

We conclude that Treas. Reg. §§ 31.3121 (a)–1 (f) and 31.3306 (b)–1 (f) fail to implement the statutory definition of "wages" in a consistent or reasonable manner. The plain language and legislative histories of the relevant Acts indicate that Congress intended its definition to be interpreted in the same manner for FICA and FUTA as for income-tax withholding. The Treasury Regulations on which the Government relies fail to do so, and their inconsistent and unexplained application undermine the contention that Congress nonetheless endorsed them. As Congress did intend a consistent interpretation of its definition, these Treasury Regulations also are inconsistent with the Court's reasoning in *Central Illinois.*

We therefore hold that the Regulations are invalid, and that the Service erred in relying upon them to include in the computation of "wages" the value of the meals and lodging that petitioner provided for its own convenience to its employees on offshore oil rigs. The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE WHITE, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

For the reasons so well stated by Judge Rubin, I agree with the judgment of the Court of Appeals for the Fifth Circuit that the Regulations under attack here are a permissible interpretation of the controlling provisions of the Internal Revenue Code. Consequently, I dissent and would affirm the judgment.