**JONES & LAUGHLIN STEEL INCORPORATED, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 82–293.**

United States District Court, W.D. Pennsylvania.

March 2, 1984.

---

Norman W. Goldin, John M. Wood, John C. Unkovic, Marvin A. Kunde and David T. Kalil, Pittsburgh, Pa., for plaintiff.

Gregory S. Hrebiniak, Thomas A. Daley, Pittsburgh, Pa., for defendant.

## OPINION

ZIEGLER, District Judge.

This is a civil action for the recovery of corporate income taxes for the taxable years 1961 through 1967 and for the period January 1 through May 15, 1967 in the amount of $1,849,868.12, plus interest from the dates of payment. Plaintiff, Jones and Laughlin Steel Incorporated, seeks to recover corporate income taxes which were assessed and collected following an adjustment by the Commissioner of Internal Revenue that reduced plaintiff's iron ore depletion deductions for the years at issue. Relying on a regulation of the Department of Treasury, the Commissioner determined that the sintering of iron ore fines and concentrates at the mill sites was a nonmining process so that the increase in the value of the fine concentrates could not be included in plaintiff's gross income from mining for the purpose of computing a percentage depletion deduction.

The issue presented is whether Treasury Regulation 1.613–4(f)(3)(ii) is consistent with the language of Section 613(c)(4) of the Internal Revenue Code of 1954.

We hold that the regulation at issue is invalid since it conflicts with the Congressional mandate and fails to "harmonize with the plain language of the statute, its origin, and its purpose." *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). Specifically, Congress has provided that sintering is a mining process which includes the treatment normally applied by mine owners to obtain a commercially marketable mineral product, whether the treatment occurs at

the extraction site or not, and therefore an agency regulation to the contrary cannot be enforced. Plaintiff's motion for summary judgment will be granted.

### A. History of Case

The facts are not in dispute. Jones & Laughlin Steel Incorporated is the successor to Jones and Laughlin Steel Corporation, and is organized and existing under the laws of the state of Delaware, with its principal office located at Pittsburgh, Pennsylvania. Plaintiff is a major manufacturer of iron and steel and operates mills at Pittsburgh and Aliquippa, Pennsylvania, and Cleveland, Ohio. The company operates iron ore mines known as the Benson Mine located at Starlake, New York, and five open pit mines on the Mesabi Range in Minnesota. These mines provide a substantial portion of the raw materials required to make iron and steel at plaintiff's mills.

Plaintiff also operates sintering facilities at the Benson Mine and at the steel mills in Cleveland, Pittsburgh and Aliquippa. Sintering is a process or treatment applied to iron ore fines and concentrates to improve their physical structure and make them suitable as a blast furnace feed (Stip. at 17, 21–24). A major portion of the Benson Mine concentrates were sintered at that mine (Stip. at 15) while the remaining concentrates were shipped to plaintiff's steel mills for treatment. The ore fines sintered at the Benson Mine were shipped to the taxpayer's steel mills and were fed directly into the blast furnaces (Stip. at 15).

In determining its depletion base for computing the percentage depletion deduction on iron ore mined at the Benson and Minnesota mines, Jones and Laughlin included as part of gross income from mining the value attributable to the sintering of ore at both the Benson Mine and at plaintiff's mills (Stip. at 18).

After examining the taxpayer's federal income tax returns for the years at issue, the Commissioner denied that portion of plaintiff's percentage depletion deduction to the extent the depletion base (gross income from mining) included the value at-

tributable to the sintering performed at the Aliquippa, Pittsburgh, and Cleveland mills. The Commissioner assessed and collected deficiencies in taxes and interest, and the taxpayer responded with this civil action claiming an overpayment of taxes for the relevant years. The Commissioner allowed a depletion deduction in an amount attributable to the value of the iron ore sintered at the Benson Mine (Stip. at 19), and that amount is not at issue.

### B. Validity of Treasury Regulation

The United States contends that Regulation 1.613–4(f)(3)(ii) permits sintering as a mining process only to the extent that the treatment is needed to ship the iron ore fine. At issue is the validity of the regulation, since Treasury regulations properly enacted carry the force of law.

Treasury regulations are valid if they "implement the Congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967); *Commissioner v. Portland Cement Company of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981). A particular regulation properly implements the Congressional mandate if the regulation "harmonizes with the plain language of the statute, its origin, and its purpose." *National Muffler Dealers Association v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). When Congress defines the statutory language, the Commissioner may promulgate regulations under 26 U.S.C. § 7805(a) to "prescribe all needful rules." Less deference is accorded, however, when the Commissioner interprets a specific Code provision. *Rowan Cos., Inc. v. United States*, 452 U.S. 247, 253, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981).

In *Rowan*, the Supreme Court articulated the following test:

Among other considerations relevant to the validity of Treasury Regulations, we inquire whether the regulation 'is a substantially contemporaneous construction of the statute by those presumed to

have been aware of congressional intent ... and [i]f the regulation dates from a later period, the manner in which it evolved merits inquiry.' We also consider, if pertinent, 'the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent reenactments of the statute.'

452 U.S. at 253, 101 S.Ct. at 2292–93. To determine the validity of Treasury Regulation 1.613–4(f)(3)(ii), we must look to the language and history of § 613(c)(4)(C) of the Internal Revenue Code to gauge "the degree of scrutiny Congress has devoted to the regulation."

The history of the Code reveals that, since 1932, Congress has declared that the depletion base includes the value attributed to any mining process that brings iron ore to "shipping grade and form" without regard to geographic limitation. Treasury Regulation 77, Article 221(g) (1933) first accorded a percentage depletion to the mining industry. The regulation designated certain processes as mining processes and in the case of iron ore provided that the depletion base shall include the value attributed to the "sorting or concentrating to bring to shipping grade and loading at the mine for shipment." *Id.* The sintering process, at issue here, was deemed a mining process in Treasury Regulation 118, § 32.33(f)(1)(iii) (1953) in accordance with language of the Revenue Act of 1943. Pub.L. No. 68, 57 Stat. 126 (1943). Likewise, the 1954 Internal Revenue Code included in the depletion base the value of "sintering ... to bring to shipping grade and form and loading for shipment...." 26 U.S.C. § 613(c)(4)(C).

The statutory language remains in effect today despite attempts by the Department of Treasury to limit the depletion base by restricting the value attributed to the sintering process. In 1956 for example, the Commissioner proposed regulations (21 Fed.Reg. 8439) to permit a depletion deduction for sintering necessary to bring the ore to shipping "form," rather than the sintering necessary to bring the ore to "shipping grade." In other words, the Department intended to recognize only the increased value necessary to bring the ore to a form for shipment, that is, a pellet form, rather than a more valuable form in which the ore can be placed directly into furnaces for steel-making. The proposal was eventually withdrawn.

In 1959, the Treasury submitted a similar proposal to Congress in an attempt to amend § 613(c) and authorize processes "to bring the mineral or ore to form and condition suitable for shipment." However, Congress refused to amend the Code and expressly rejected the "shippability" test proposed by the Commissioner. The language of § 613(c)(4)(C), after the 1960 Code amendments, remained substantially the same as the prior enactment, with both permitting sintering "to bring to shipping grade and form, and loading for shipment." In rejecting the Treasury's proposed amendment, the Conference Committee stated: "... 'sintering' is to be allowed to the same extent as under existing law." Conf. Report No. 2005, 86th Cong.2d Sess., June 25, 1960, U.S.Code Cong. & Admin. News 1960, 2563, 2582; 1960–2 C.B. 741, 747.

The Department, undaunted by rejection of the statutory amendment, adopted rules in 1972 to limit sintering to those processes necessary to bring the ore to "shipping form." Regulation 1.613–4(f)(3)(ii) was promulgated as follows: "[S]intering will be considered a mining process only where it is applied to an ore or mineral, or a concentrate of an ore or mineral, as an auxiliary process necessary to bring the ore to shipping form." 37 Fed.Reg. 5373 (1972), T.D. 7170. The regulation was retroactive to tax years following December 31, 1960, and serves as the basis for the Commissioner's deficiency assessment in this case.

■ The United States contends that the Regulation is consistent with § 613(c)(4)(C) of the Code. Noting that the 1943 amendment to the Code included the process of "sintering" and added the words "and form," after the word "grade," the United States argues that a shippability test, that

is, a geographic cut-off for sintering, existed from the beginning, with sintering allowed only to bring the ore to shipping form. In our judgment, such a reading ignores the plain language of § 613(c)(4)(C).

We find persuasive the reasoning of the late Hon. Daniel J. Snyder, Jr., of this court in *Jones & Laughlin Steel Corporation v. United States*, 435 F.Supp. 270 (W.D.Pa. 1977), *aff'd without opinion*, 582 F.2d 1274 (3d Cir.1978) There Judge Snyder was faced with a challenge to the Commissioner's reduction of Jones and Laughlin's depletion deduction in the 1960 tax year by excluding the value attributable to the sintering process performed at the taxpayer's mills. After carefully examining the legislative history and reviewing the relevant authorities, Judge Snyder articulated what we believe to be the proper reading of § 613(c)(4)(C):

> We therefore find that with respect to the iron ore fines and concentrates mined by the Plaintiff at its Benson and Minnesota Mines, the sintering of these fines and concentrates at facilities located away from the mine, and at or near the Plaintiff's blast furnaces, are a mining process so that the increase in value of the sintered fines and concentrates should be added to the Plaintiff's gross income from mining, as defined in Section 613(c) of the Internal Revenue Code of 1954, for the purpose of computing Plaintiff's percentage completion deduction.

435 F.Supp. at 277.

Simply stated the court held: " 'to bring to shipping grade and form' refer[s] to the application of the specified processes applied to make the iron ore comparable to 'direct shipping ores' both as to grade and form, *i.e.*, in the case of iron ore, an ore suitable for blast furnace use." 435 F.Supp. 270, 276. Noting that approximately 99 percent of the iron ore consumed in the United States in 1960 was used to produce iron and steel, the court distinguished *United States v. Cannelton Sewer Pipe Company*, 364 U.S. 76, 80 S.Ct. 1581, 4 L.Ed.2d 1581 (1960). (Depletion allow-

ance should not be based upon the value of a product refined beyond a commercially marketable form). Judge Snyder found that the sintering of iron ore by Jones and Laughlin did not go beyond that necessary to make the ore commercially marketable, and he noted that: "[I]t is clearly apparent ... that there is here an ordinary treatment process normally applied by mine owners to obtain a commercially marketable mineral product." 435 F.Supp. at 276. This fact remains true, for as the parties in the present case have stipulated, almost 100 percent of the iron ore consumed in the United States is used in blast furnaces. Iron ore at less than shipping grade is not commercially marketable.

After independently reviewing the legislative history of the statute, we agree with Judge Snyder's analysis of § 613(c)(4)(C) as it applied in 1960. We also conclude that this interpretation is applicable to amended § 613(c)(4)(C) and the tax years following December 31, 1960 because, as rehearsed, Congress has declared that a depletion base includes the value attributed to any mining process that brings iron ore to a commercially marketable product. Sintering at the mill site is no exception. Since the Commissioner's interpretation of the Code, and the regulation at issue, are contrary to the policy decision made by Congress, the motion of Jones & Laughlin Steel Incorporated for summary judgment will be granted. In light of our conclusion, we need not address plaintiff's contention that the doctrine of estoppel precludes the United States from litigating the issue whether sintering at plaintiff's mills is a mining process.