**Elizabeth D. EDMUNDSON**

v.

**UNITED STATES of America.**

Civ. A. No. 93–2036.

United States District Court,
W.D. Louisiana,
Lafayette Division.

June 5, 1995.

James R. Leonard, McBride, Foret, Rozas & Leonard, Lafayette, LA, for plaintiff.

Neal I. Fowler, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### OPINION

NAUMAN S. SCOTT, District Judge.

Trial of this matter was held on January 4, 1995 in Lafayette, Louisiana. Technically speaking, the central issue in this case is whether Elizabeth D. Edmundson's failure to give the I.R.S. proper notice of a foreclosure sale results in the survival of the I.R.S.' lien on her property. If we hold that the I.R.S.' lien survives, the I.R.S. has the power to levy on Mrs. Edmundson's property. However,

for the common mortgagee and taxpayer, the real issue is whether the I.R.S. can use a burdensome, ambiguous and highly technical notice provision to trip unwary mortgage holders who buy back the property at the foreclosure sale. And trip you will. Indeed, beware those who own a mortgage encumbered by a junior federal lien because when you pull yourselves from the ground you may find that the I.R.S. now owns your property.

After considering the trial testimony and the record as a whole, we find that Mrs. Edmundson made every effort to provide the I.R.S. with proper notice. Her actions wreak of good faith. We also find that certain aspects of the notice provision drafted by the Secretary of the Treasury are unduly burdensome and confoundedly ambiguous. Because of the latitude that is built into this notice provision, the I.R.S. was able to sit back and wait for Mrs. Edmundson to fall into its trap. In short, if we accept the government's position, Mrs. Edmundson would lose her property and be forced to pay someone else's taxes. Such a result is more than unfair, it borders on naked illegal confiscation. Accordingly, we hold that the notice was sufficient and that the I.R.S.' lien was extinguished at the foreclosure sale.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as conclusions of law. To the extent any of the conclusions of law are findings of fact, they are adopted as findings of fact.

### FINDINGS OF FACT

Prior to trial, the parties stipulated to the relevant facts. Therefore, instead of reciting the entire stipulation in this opinion, we briefly summarize the important facts set forth in the stipulation. In addition, when necessary, we will make additional factual findings.

In February of 1991, Mrs. Edmundson sold the real property at issue to the Adlers by credit sale. The Adlers made a downpayment of $7,500.00 and gave Mrs. Edmundson a promissory note secured by a mortgage in the amount of $35,000.00. Un-

beknownst to Mrs. Edmundson, in April of that same year, the Adlers sold the property to Total Piping Corporation (Total Piping). Later, in February of 1992, the United States properly filed a Notice of Federal Tax Lien against the property in the amount of $51,188.58 for the tax liabilities of Total Piping.

After the Adlers became delinquent on their mortgage payments, Mrs. Edmundson filed a petition for executory process seeking the seizure and sale of the property. She obtained an order authorizing the sale but prior to the sale she became aware of the transfer to Total Piping and the federal tax lien.[1] In order to give proper notice to the I.R.S., she rescheduled the sale.

On May 14, 1992, Mrs. Edmundson's counsel, James Leonard, mailed a letter styled "Notice of Sheriff's Sale" by certified mail both to the Chief of the Special Procedures Function of the I.R.S. and to Nicholas Brady, Secretary of the Treasury. The "Notice" stated the name of the taxpayer, a description of the property, the taxpayer's address, the taxpayer's employment identification number, the amount $51,188.58, and the name of the revenue officer who signed the filed Federal Notice of Tax Lien. The letter also stated the place of the sale and that the sale was set for July 8, 1992 at 10:00 a.m.

On June 24, 1992, the I.R.S. mailed an acknowledgement to James Leonard stating that the "Notice of Sheriff's Sale" was inadequate. The letter stated that "[t]he approximate amount of the principal obligation, including interest, due the person selling the property, and a description of any expenses that will be chargeable against the sale proceeds were omitted." Mr. Leonard received the letter on June 29, 1992, only eight days prior to the scheduled sale.

That very same day Mr. Leonard responded with a letter sent by regular mail stating that "the approximate amount of the principal obligation, including interest, is $18,023.92, and the estimated expenses chargeable against the proceeds are $1,250.00." On July 6, 1992, after realizing that the principal obligation stated in the prior letter was in-

---

1. She likely was made aware of the transfer and the lien because they were listed on the mortgage

certificate customarily issued by the Clerk of Court in connection with a foreclosure sale.

correct, Mr. Leonard mailed a second letter by regular mail stating the correct principal obligation amount as $19,732.40. Neither of these letters was sent by registered mail. The parties had no further communication prior to the August 8 sale. While the I.R.S. whines that neither of these letters stated whether the sale was still set for July 8, 1992, the I.R.S. admits in the stipulation that it had actual notice of the July 8 sale date prior to the sale.

On the ill-fated date of July 8, 1992, Mrs. Edmundson purchased the property at the Sheriff's sale for $15,000.00, plus costs of sale. As a result of the sale, she was awarded the deed to the property and the junior mortgage interests were extinguished by operation of law. Although the I.R.S. had 120 days to redeem the property, it did not do so.

On October 18, 1993, the I.R.S. served a Notice of Levy against Total Piping to collect the company's outstanding tax liabilities. Shortly thereafter, the I.R.S. served a Notice of Seizure on Mrs. Edmundson for the property at issue in the amount of $75,403.00, which represented the tax liability of Total Piping, including interest. The total unpaid assessed tax liabilities of Total Piping up to September 12, 1994 is $104,762.78.

## CONCLUSIONS OF LAW

Under facts of this case, the notice provision promulgated by the Secretary of the Treasury is unreasonable, ambiguous and unduly burdensome. Several factors convince us that the I.R.S. has too much latitude under the notice provision and that the notice Mrs. Edmundson provided to the I.R.S. was sufficient in this case. First, she made every effort to give the I.R.S. proper notice. Second, the I.R.S. has admitted to having actual notice of the July 8 sale. Finally, the I.R.S.' failure to redeem the property, which would have been an equitable solution in this case, convinces us that the notice provision is slanted too heavily in favor of the government. Accordingly, we hold that Mrs. Edmundson provided sufficient notice to the I.R.S. and, therefore, that the I.R.S. tax lien

was extinguished by the foreclosure sale and the running of the redemption period.

### I. The Applicable Law Governing Notice

### A. When the I.R.S. Properly Files its Lien, the Foreclosing Mortgagee must give Proper Notice to Extinguish the Lien.

Title 26, section 7425(b) sets out the law concerning the discharge and survival of federal liens after a sale of the encumbered property:

> ... a sale of property on which the United States has or claims a lien, or a title derived from the enforcement of a lien, under the provisions of this title, made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgement on the obligation secured by such an instrument, or pursuant to a non-judicial sale under a statutory lien on such property—
>
> (1) shall ... be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale [2] and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1); or
>
> (2) shall have the same effect with respect to the discharge or divestment of such lien or such title of the Unites States, as may be provided with respect to such matters by the local law of the place where such property is situated, if—
>
> > (A) notice of such lien or such tile was not filed or recorded in the place provided by law for such filing more than 30 days before such sale [3],
> >
> > (B) the law makes no provision for such filing, or
> >
> > (C) notice of such sale is given in the manner prescribed in subsection (c)(1). 26 U.S.C.S. § 7425(b) (1994).

Subsection (c)(1), "Notice of sale," states that "[n]otice of sale to which subsection (b) applies shall be given **(in accordance with the regulations provided by the Secretary)**

---

**2.** The I.R.S., properly and timely filed its lien.

**3.** See footnote 1.

in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary." (Emphasis added). *Id.* at § 7425(c)(1). Finally, subsection (d) provides that the United States may redeem the property within 120 days from the date of sale, or within the period allowable under local law, whichever is longer. *Id.* at § 7425(d).

## B. What is Proper Notice?

Under the authority granted by Congress in 26 U.S.C. section 7425(c)(1), the Secretary of the Treasury has spelled out the specific notice requirements necessary to discharge a federal lien. Regulation Section 301.7425–3 reads as follows:

(d) Content of notice of sale—(1) in general. With respect to a notice of sale described in paragraph (a) or (c) of this section, the notice will be considered adequate if it contains the information in paragraph (d)(1)(i), (ii), (iii), and (iv) of this section.

(i) The name and address of the person submitting the notice of sale;

(ii) A copy of each notice of Federal Tax lien (Form 668) affecting the property to be sold, or the following information as shown on each such Notice of Federal Tax lien—

(A) The internal revenue district named thereon,

(B) The name and address of the taxpayer, and

(C) The date and place of filing of the notice;

(iii) With respect to the property to be sold, the following information—

(A) A detailed description, including location, of the property affected by the notice (in the case of real property, the street address, city, and State and the legal description contained in the title or deed to the property and, if available, a copy of the abstract of title),

(B) The date, time place, and terms of the proposed sale of the property, and

(C) (perishable property—not applicable)

(iv) **The approximate amount of the principal obligation, including interest, secured by the lien sought to be enforced and a description of the other expenses (such as legal expenses, selling costs, etc.) which may be charged against the sale proceeds.** (Emphasis added.) Treas.Reg. § 301.7425–3.

The I.R.S. complained in its letter dated June 24, 1992 that Mrs. Edmundson had not complied with section (d)(1)(iv) of the Secretary's notice provision.[4]

## C. What is Inadequate Notice and how must the I.R.S. Respond?

In regulation 301.7425–3(d)(2), titled "Inadequate Notice," the Secretary attempts to define insufficient notice, the effects of various insufficiencies and the minimal steps the I.R.S. must take in response. While this provision is as technical as it is vague, we include it *in toto* because the provision is at the heart of this controversy. It reads as follows:

[e]xcept as otherwise provided in this subparagraph, a notice as described in paragraph (a) which does not contain the information described in paragraph (d)(1) of this section shall be considered inadequate by a district director. If a district director determines that the notice is inadequate, he will give written information of the items of information which are inadequate to the person who submitted the notice. A notice of sale which does not contain the name and address of the person submitting such notice shall be considered to be inadequate for all purposes without notification of any specific inadequacy. In any case where a notice of sale, given after December 31, 1976, does not contain the information required under paragraph (d)(1)(ii) of

4. The I.R.S. asserts that Mrs. Edmundson's notice of sale was also inadequate because she did not set out the date on which the Notice of Federal Tax Lien was filed and because she did not provide an adequate description of the property. The I.R.S. also complains that Mrs. Ed-

mundson's did not send her letters by registered mail. We find that since the I.R.S. failed to raise these problems in its notice of inadequacy, they are waived. *Whiteside v. United States*, 833 F.2d 820 (9th Cir.1987).

this section with respect to a Notice of Federal Tax Lien, the district director may give written notification of such omission without specification of any other inadequacy and such notice of sale shall be considered inadequate for all purposes. In the event the district director gives notification that the notice of sale is inadequate, a notice complying with the provisions of this section (including the requirement that the notice be given not less than 25 days prior to the sale in the case of a notice described in paragraph (a) of this section) must be given. However, in accordance with paragraph (b)(1) of this section, in such a case .the district director may, in his discretion, consent to the sale of the property free of the lien or title of the United States even though notice of sale is given less than 25 days prior to the sale. In any case where the person who submitted a timely notice which indicates his name and address does not receive, more than 5 days prior to the date of sale, written notification from the district director that the notice is inadequate, the notice shall be considered adequate for purposes of this section. *Id.*

For the reader who has made it this far, rejoice, for we include no more U.S.Code sections or Treasury regulations.

## II. Regulation 301.7425–3(d)(2), "Inadequate Notice," is Unreasonable

When we consider Mrs. Edmundson's actions together with the I.R.S.' response, we find that this regulation is ambiguous and overly burdensome. See *Rowan Cos. v. United States,* 452 U.S. 247, 252–253, 101 S.Ct. 2288, 2292–93, 68 L.Ed.2d 814 (1981); *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698–99, 92 L.Ed. 831 (1948); *Brown v. U.S.,* 890 F.2d 1329, 1336 (5th Cir.1989). We could focus our attack on the I.R.S.' actions by finding that, in this particular case, it acted unreasonably under the regulation, but such a finding would do little to eradicate the real cancer, the regulation itself. While we do take issue with the I.R.S.' actions, we find that the great ambiguity and latitude of the regulation allowed the I.R.S. to sit back and

lay in wait for Mrs. Edmundson to stumble and fall into its trap. "In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin and its purpose." *Rowan Cos.,* 452 U.S. at 253, 101 S.Ct. at 2292 (citations omitted). According to the House Report, the purpose of the notice regulations is to give the I.R.S. an opportunity to review its position "without placing an undue burden on the foreclosing creditor." H.Rep. No. 1884, 89th Cong., 2d Sess., U.S.Code Cong. & Admin.News p. 3722 (1966), *reprinted in* 1966–2 C.B. 815, 832–33. We find that the effect of regulation 301.7425–3(d)(2) runs contrary to Congress' intent because it places an undue burden on the foreclosing creditor.

### A. Mrs. Edmundson made Several Good Faith Efforts to Comply with the Notice Regulation

The facts plainly show that Mrs. Edmundson, through her attorney, Mr. Leonard, made several good faith attempts to give the I.R.S. proper notice of the sale. We are satisfied that in this case the notice she gave was sufficient for the I.R.S. to protect its interests. First, she cancelled the original sale when she learned of the transfer to Total Piping and the federal tax lien in order to provide the government with proper notice. Second, on May 14 1992, she sent the I.R.S. a notice, styled "Notice of Sheriff's Sale," informing the I.R.S. that the sale would be held on July 8, 1992. While it is true that this notice omitted the amount outstanding on the principal obligation, plus expenses, there is some evidence suggesting that the I.R.S. had actual notice of these figures. Mrs. Edmundson's attorney claims that he called and informed an I.R.S. agent of these figures. In his deposition, Eugene Nepveaux, the agent assigned to this I.R.S. file admitted to having a phone conversation concerning Mrs. Edmundson's property. Deposition, p. 12–13, 30–31. Unfortunately, Mr. Nepveaux's memory is extremely poor and he can only recall that the conversation concerned "a discharge." *Id.* at 12, 30. Nonetheless, the court is convinced that this

is but another example of Mrs. Edmundson's good faith effort to provide the I.R.S. with sufficient information. Finally, Mrs. Edmundson responded to the I.R.S.' notice of inadequacy on the same day she received it; also, she promptly sent a follow-up letter in an attempt to provide the accurate figures.

## B. The Regulation is Ambiguous and Unduly Burdensome

The first example of ambiguity inheres in the phrase "inadequate for all purposes." To the layman, this phrase implies that some notice is sufficient for some purposes but insufficient for others; it implies degrees of notice. However, the use of this language appears to relate to the response which the I.R.S. must take to different forms of notice. We say "appears to relate" because the relationship is by no means clear to us. The phrase is first used where the regulation states that if the name and address of the person submitting the notice is omitted, then the notice is "inadequate for all purposes without notification of any specific inadequacy." We assume that what is meant is that no notice of inadequacy must be sent by the I.R.S., apparently because it would not know to whom to send the notice of inadequacy.[5] However, the phrase might also be construed as meaning, especially in light of the sentence preceding it, that the I.R.S. must send a general notice of inadequacy, if it can find an address to send it to,[6] but need not specify particular inadequacies.

The phrase "inadequate for all purposes" next appears where the regulation states that if the notice does not include the required information on the federal tax lien[7], "the district director may give written notification of such omission without specification of any other inadequacy and such notice of sale shall be considered inadequate for all purposes." There are at least two problems with the quoted language. First, the use of "may" can be construed to mean either that the district director has total discretion in deciding whether to give a notice of inadequacy or that when the district director does give a notice of inadequacy, he or she may specify only that the inadequacy concerns the tax lien information without citing additional inadequacies in the notice. Second, the use of "shall be considered inadequate for all purposes" implies that some types of notice are sufficient for some purposes and not others, or that some forms of notice can be "cured."

■ While these ambiguities are troublesome, the most onerous part of the statute is the requirement that a perfect notice, one that complies with regulation in every way, be received by the I.R.S. not less than 25 days prior to the sale.[8] The application of this requirement, combined with the latitude the I.R.S. has in responding to inadequate notices, demonstrates that the I.R.S. has too much room to maneuver and delay.

■ In the present case, Mrs. Edmundson sent her notice of sale on May 14, 1992, giving the I.R.S. fifty four days to receive the notice and reply concerning inadequacies. In what seems like typical fashion, the I.R.S. waited until June 24, 1992, fourteen days before the scheduled sale, to send a notice of inadequacy. As outlined above, Mrs. Edmundson's responses to the I.R.S. letter were prompt and in good faith. Obviously, she did

---

5. Interestingly, in *Estate of Oskey v. U.S.*, 695 F.Supp. 422 (D.Minn.1988), the district court for the District of Minnesota held that the failure to include the name and address of the person submitting the notice did not make the notice "inadequate for all purposes."

6. Most of the time, the I.R.S. will have the address of the foreclosing creditor because regulation 301.7425–3(d)(ii) requires it.

7. Regulation 301.7425–3(d)(1)(ii) *requires* the foreclosing mortgagee to either provide a copy of the Notice of Federal Tax Lien or all the detailed information that appears thereon, *including the internal revenue district where it was filed and

the date and place of filing of the notice.* How nice it must be for the I.R.S. agents who sit back and let the foreclosing mortgagees do all of their work for them. The liens are I.R.S. liens: the I.R.S. should be responsible for collecting such information. At most, the taxpayer should have to make the I.R.S. aware that there is an I.R.S. lien on the property.

8. While 26 U.S.C. § 7425(c)(1) states that the foreclosing creditor must submit a notice 25 days prior to sale, Congress likely did not foresee that the Secretary would write such an onerous an detailed notice provision which requires strict *compliance and provides little opportunity to cure inadequacies.*

not know that her attempts at "curing" her original notice were insufficient because she did not allow the I.R.S. another 25 days upon receipt of the corrections. Had the I.R.S. taken five minutes to draft a letter or make a phone call advising Mrs. Edmundson of this problem, she certainly would not have proceeded with the sale knowing that she would lose her property. Needless to say, the benevolent I.R.S., which has admitted having actual notice that the sale would be held on July 8 and which requires the taxpayer to give it every bit of information about its own liens, chose to sit on its hands. Either intentionally or unintentionally, and we lean towards the former, the I.R.S. waited for Mrs. Edmundson to trip over the regulation with the result that she loses her property to the I.R.S. because an unrelated company failed to pay its taxes. The I.R.S. easily could have and should have notified Mrs. Edmundson that she needed to delay the sale for at least 25 days after her corrections were received. Considering her prior efforts to comply, she certainly would have rescheduled the sale.

Mrs. Edmundson argues that some inadequacies in a notice of sale, namely those whose omission do not make the notice inadequate for all purposes, are not subject to the 25 day rule. In other words, the omission of the outstanding principal amount does not require the foreclosing mortgagee to give the I.R.S. a new 25 day period; the foreclosing mortgagee need only correct the omission prior to the sale. Given the ambiguities in the regulation, this is a reasonable argument. We find it particularly appealing because, to some extent, it equalizes the burden of procuring information and does away with the disproportionate punishment for technical noncompliance. Currently, the regulation requires the foreclosing mortgagee to provide the I.R.S. with all sorts of information, most of which the I.R.S. has access to, and within a certain lengthy period of time so the I.R.S. can digest it. If you fail to comply in any manner, and you purchase the property at the sale, you lose because your mortgage is extinguished and the I.R.S.' lien survives. As the tapestry of regulations purportedly reads now, the punishment, loss of the mortgagee's lien with the survival of the I.R.S.',

does not fit the crime, a good faith omission of technical information.

Furthermore, under the Treasury's regulation, the I.R.S. can give a foreclosing mortgagee a notice of inadequacy up until five days prior to sale and then the I.R.S. is entitled to a new 25 day period beginning when a perfect notice is received. Armed with this provision, even when the I.R.S. spots an inadequacy on a notice which is submitted six months in advance, it can wait until there are less than 25 days until the sale and then send a notice of inadequacy. Essentially, the I.R.S. can postpone a sale because its agents are behind in their work or because there is a better chance of attracting more bidders to a later sale or for any other imaginable reason; and under some case law, this proposition holds true even when the I.R.S. has actual notice of the technical omissions. Also, there appears to be no limit to the number of times the I.R.S. can delay a sale if the notice regulations are not strictly complied with. There must be a better way. The I.R.S. must share some responsibility in procuring this information and informing the foreclosing mortgagee in a timely fashion.

### CONCLUSION

We find that Mrs. Edmundson provided the I.R.S. with sufficient notice to protect its interests. We also find that regulation 301.7425–3(d)(1)(ii) in unreasonable. Finally, we would be dissatisfied with our efforts herein if we concluded without a few final remarks about the I.R.S.' actions in this case. Irresponsible. Reprehensible.

Accordingly, we hold that the I.R.S.' lien was extinguished by the foreclosure sale and the running of the redemption period.

Plaintiff is instructed to prepare a judgment in conformity with this Opinion and submit it to this court for execution after it has been approved as to form and content evidenced by the signatures of the attorneys of record.